UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA ANTONIA FRANCO,<br><br>    Petitioner,<br><br>v.<br><br>JANEL ESPINOZA, Warden,<br><br>    Respondent. | No. 1:18-cv-00057-DAD-SKO (HC)<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[THIRTY DAY OBJECTION DEADLINE]** |

Petitioner is a state prisoner proceeding with counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. She is currently serving a sentence of nine years plus 25-years-to-life for her conviction of robbery, attempted murder, and causing great bodily injury with a firearm. The instant habeas action challenges her conviction. As discussed below, the Court finds the claims to be without merit and recommends the petition be **DENIED.**

**I.    PROCEDURAL HISTORY**

On November 8, 2013, a jury in the Fresno County Superior Court found Petitioner guilty of second degree robbery (Cal. Penal Code § 211) and attempted murder (Cal. Penal Code §§ 187(a), 664). People v. Valdez, No. F067927, 2016 WL 3219141, at *1 (Cal. Ct. App. June 2, 2016). The jury further found true the allegation that Petitioner had personally and intentionally discharged a firearm and proximately causing great bodily injury (Cal. Penal Code § 12022.53(d)). Id. The superior court sentenced Petitioner to nine years for the attempted murder

1

count and a consecutive term of 25-years-to-life on the firearm discharge with great bodily injury allegation. Id.

Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA"). On June 2, 2016, the Fifth DCA affirmed the judgment. Id. Petitioner filed a petition for review in the California Supreme Court, and the petition was summarily denied on August 10, 2016. (Doc. 26-37 at 1.)

Petitioner then filed petitions for writ of habeas corpus in the state courts. She filed a habeas petition in the Fresno County Superior Court on January 24, 2018. (Doc. 26-38 at 1.) The petition was denied in a reasoned decision on March 22, 2018. (Doc. 26-39.) Petitioner then filed a habeas petition in the Fifth DCA on May 11, 2018. (Doc. 26-40.) The petition was summarily denied on July 19, 2018. (Doc. 26-41.) Lastly, on October 1, 2018, Petitioner filed a habeas petition in the California Supreme Court. (Doc. 26-42.) The petition was summarily denied on September 19, 2018. (Doc. 26-43.)

On November 3, 2017, Petitioner filed a federal petition for writ of habeas corpus in this Court along with a motion for stay and abeyance. (Doc. 1.) On January 25, 2018, the Court granted Petitioner's motion for stay and the action was stayed pending exhaustion of state remedies. (Doc. 6.) On October 9, 2018, Petitioner notified the Court that the California Supreme Court had denied review of her petition and she had exhausted her state remedies. (Doc. 12.) She filed an amended petition on November 12, 2018. (Doc. 14.) Respondent was ordered to file a responsive pleading, and on March 13, 2019, Respondent filed an answer to the petition. (Doc. 25.) Petitioner filed a traverse on April 8, 2019. (Doc. 27.)

**II.     FACTUAL BACKGROUND**

The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision[1]:

> Lopez [Fn.7] first encountered Valdez in October 2010. The men became "good friends" and met regularly to use alcohol and methamphetamine. Valdez later introduced Lopez to Franco.

---

[1] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Therefore, the Court will adopt the Fifth DCA's summary of the facts. Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

2

> [Fn.7] At the time of the trial, Lopez was in custody on unrelated charges. He was given use immunity in exchange for his testimony.

Sometime after midnight on December 2, 2010, Lopez paid for a room at the Parkland Motel in Fresno, where he, Valdez, Franco, and Aimee Doughty drank beer and smoked methamphetamine. At some point, Lopez left the motel, picked up a female acquaintance, drove her to his uncle's house, and received what appeared to be a $20 bill as recompense from her. Upon his return, in the presence of Valdez, Franco, and Doughty, Lopez compared the newly acquired bill to $500 of his own cash and determined the former was a counterfeit. After Lopez placed the money in his pocket, he observed Valdez and Franco chatting inside the walk-in closet. Once Valdez moved to a different part of the room, Lopez approached Franco, who had remained in the closet, and briefly spoke with her. When Lopez exited the closet, Valdez said, "'All right,'" and shot Lopez in the right upper abdomen from 17 feet away. Franco then shot Lopez in his left side, below the ribcage, at close range. [Fn.8] Valdez said to Lopez, "'Give me your money, your dope, and your car keys.'" Lopez relinquished his money, keys, cell phone, and lottery tickets. Thereafter, Valdez, Franco, and Doughty departed. Lopez tried to use the room's landline phone to call for help but discovered "the cord was ripped off the wall." He left the room, knocked on nearby doors, and pleaded for assistance. Lopez eventually collapsed.

> [Fn.8] Lopez originally reported Valdez and Franco possessed a semiautomatic and a revolver, respectively. At the trial, however, Lopez testified Valdez fired the revolver while Franco fired the semiautomatic.

Meanwhile, the motel's security guard, who had heard gunfire and witnessed three people fleeing the premises, called 911. Police officers and paramedics arrived on the scene at around 4:00 a.m. Lopez was transported to Community Regional Medical Center, where he presented two gunshot wounds and underwent surgery to repair damage to his small intestine and vena cava. Dr. Krista Kaups, the general trauma and critical care surgeon who performed the operation, opined these injuries were so severe Lopez would have died without treatment. X-rays exhibited a single bullet lodged in front of the spinal column and below the ribcage. Dr. Kaups concluded one of the wounds was the entrance wound while the other wound "may well have been a graze wound, ... where [another] bullet didn't actually enter [Lopez], but ... just nicked the skin." At the time she treated Lopez, Dr. Kaups acknowledged she "didn't spend a lot of time figuring out which wound was the source of where the injuries came from."

On December 11, 2010, following surveillance of Valdez's mother's home, police officers came across Valdez, who attempted to escape on foot. During the chase, Valdez discarded a loaded revolver. The officers ultimately apprehended Valdez and retrieved the gun.

Mendoza, 2015 WL 3399162, at *1-7.

### III.     DISCUSSION

A.     Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that she suffered violations of her rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.  Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of her claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011). Thus, a state prisoner seeking a writ of habeas corpus from

a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

C. Review of Petition

The petition presents the following claims for relief: 1) The state court decision was objectively unreasonable and no fairminded jurists could agree on the correctness of the state court's decision because the prosecution failed to prove beyond a reasonable doubt that Petitioner personally discharged a firearm which caused great bodily injury; 2) The state court decision was objectively unreasonable and no fairminded jurists could agree on the correctness of the state

court's decision because the use of pattern instruction CALCRIM No. 3149 failed to fully define proximate cause; and 3) Petitioner received ineffective assistance of trial counsel for failing to investigate and produce into evidence Dr. Kaup's medical report showing that Petitioner did not cause great bodily injury.

   1. <u>Insufficiency of the Evidence</u>

In her first claim for relief, Petitioner alleges that the evidence was insufficient to support the jury's finding that she caused great bodily injury when she fired the second shot. She alleges that the shot she fired merely grazed or nicked the skin and caused only a minor wound. She states that the major injuries suffered by the victim were caused by the shot fired by her codefendant.

Petitioner raised this claim on direct appeal in the state courts. In the last reasoned decision, the Fifth DCA rejected the claim as follows:

[] *Background*

In her summation, the prosecutor, Lindsey Bittner, discussed the firearm discharge allegation in connection with counts 1 and 2 and argued defendants together proximately caused great bodily injury to Lopez:

> "There's an enhancement here as to Count One, ... [s]ection 12022.53 [, subdivision](d). This basically means that each defendant used a gun when they committed that robbery. Personal discharge of a gun during a crime.... [P]retty clear [Lopez] was shot first by [Valdez] in the torso. He's looking right at [Valdez], ... Lopez is, and then he turns to his left ... and sees [Franco] and actually feels the cold metal against his side and is some time shortly thereafter shot. Intentional discharge, you don't point a gun and fire it at someone if you don't intend to hit [him].
>
> "And the defendant's act caused ... great bodily injury. That is defined in the law, folks. [Lopez] would have died if he hadn't gotten medical attention. And which bullet caused which wound is not relevant.... [Y]ou saw the scars and you heard about the procedures, both of them. There was [great bodily injury].
>
> "You'll read CALCRIM [No.] 3149. It tells you what I need to prove to you beyond a reasonable doubt, a burden I embrace here. There may be more than one cause of [great bodily injury], exactly what I was just saying.... These defendants acting together caused [great bodily injury] to Isai Lopez. And that causes [great bodily injury] if it is a substantial factor, are the words used, in causing the injury, and substantial factor is defined under this jury instruction ... as more than a remote or trivial factor. Here, these two defendants' actions are the only factor, folks. I already spoke about the evidence here, and both defendants are guilty of this enhancement on Count One. [¶] ... [¶]

6

> "Count Two enhancement. Same thing here, folks, same elements. Defendant's act caused [great bodily injury]. I don't have to show ... which bullet caused [great bodily injury]. They both engaged in something that was a substantial factor in [Lopez's] injury, same analysis...."

[] *Standard of review*

"In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 59–60.) "We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.]" (*Id.* at p. 60.) "Before the judgment of the trial court can be set aside for insufficiency of the evidence to support the verdict of the jury, it must clearly appear that upon no hypothesis what[so]ever is there sufficient substantial evidence to support it. [Citation.]" (*People v. Redmond* (1969) 71 Cal.2d 745, 755.) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.]" (*People v. Albillar, supra*, at p. 60.)

"Although we must ensure the evidence is reasonable, credible, and of solid value, ... it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.]" (*People v. Jones* (1990) 51 Cal.3d 294, 314.) "Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]" (*Ibid.*)

[] *Analysis*

As previously noted, "any person who, in the commission of a [qualifying] felony ... personally and intentionally discharges a firearm and proximately causes great bodily injury ... to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life." (§ 12022.53, subd. (d).) On appeal, Franco admits she shot Lopez while Valdez does not deny he shot Lopez. The record, which we view in the light most favorable to the judgment, establishes Valdez fired first from a distance of 17 feet, Franco fired second at close range, and Lopez sustained great bodily injury in the form of severe damage to his small intestine and vena cava. Dr. Kaups, the surgeon, opined Lopez would have died without treatment. She testified Lopez presented two gunshot wounds in the right upper abdomen and in the left side, respectively. One was the entrance wound and the other was a graze wound. However, Dr. Kaups could not identify whether the right upper abdomen wound inflicted by Valdez or the left side wound inflicted by Franco was the entrance wound, i.e., "the source of where [Lopez's] injuries came from."

Franco contends the section 12022.53, subdivision (d), firearm discharge enhancement on counts 1 and 2 should be reversed because the prosecution did not prove she proximately caused great bodily injury. She asserts Valdez's initial bullet inflicted Lopez's abdominal damage whereas her bullet "merely grazed or nicked [Lopez's] skin," resulting in a trivial surface wound. As discussed, however, the evidence is inconclusive on this point.

7

> In the event it can be shown both defendants fired gunshots at a victim and a gunshot was the actual, direct cause of the victim's injury, but it cannot be determined which defendant fired the harm-inflicting bullet, a defendant is criminally liable so long as his or her conduct was a substantial factor contributing to the injury. (*People v. Sanchez, supra*, 26 Cal.4th at pp. 845–849; see *People v. Jennings, supra*, 50 Cal.4th at p. 644 ["[T]he 'substantial factor' rule for concurrent causes 'was developed primarily for cases in which application of the but-for rule would allow each defendant to escape responsibility because the conduct of one or more others would have been sufficient to produce the same results.' [Citation.]"]; see also *Bland, supra*, 28 Cal.4th at p. 337 ["A person can proximately cause a gunshot injury without personally firing the weapon that discharged the harm-inflicting bullet."].) Here, Franco shot Lopez at close range immediately after Valdez discharged the initial shot from across the motel room. Her act cannot simply be dismissed as insignificant, theoretical, trivial, or remote.

Valdez, 2016 WL 3219141, at *5-7.

### a. Legal Standard

The law on sufficiency of the evidence is clearly established by the United States Supreme Court. Pursuant to the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307, the test on habeas review to determine whether a factual finding is fairly supported by the record is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990). Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief. Jackson, 443 U.S. at 324. Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326. Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).

After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson with an additional layer of deference. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). In applying the AEDPA's deferential standard of review, this Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson,

477 U.S. 436, 459 (1986).

In Cavazos v. Smith, 565 U.S. 1 (2011), the United States Supreme Court further explained the highly deferential standard of review in habeas proceedings, by noting that Jackson

> makes clear that it is the responsibility of the jury - not the court - to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."
>
> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

Id. at 2.

        b. Analysis

The victim testified that after he walked out of the closet area in the motel room, Petitioner's codefendant stated, "Alright," whereupon he shot the victim from across the room. (Doc. 26-12 at 60.) Petitioner then pressed a gun to the victim's side and also shot him. (Doc. 26-12 at 63-64.) According to the trauma surgeon, the victim suffered two gunshot wounds: one to his left side below his ribcage, and one to the right upper abdomen. (Doc. 26-14 at 53, 72.) The victim suffered numerous internal injuries to his small bowel, small intestine, and vena cava. (Doc. 26-14 at 57.) The victim also suffered what was possibly a graze wound that nicked the skin. (Doc. 26-14 at 61.) The surgeon stated both wounds were cleaned and bandaged, but the trauma team didn't spend much time attempting to figure out which wound caused which internal injuries. (Doc. 26-14 at 65-66.) Thus, the surgeon could not conclude which injuries were caused by which shot.

Petitioner claims there was insufficient evidence that she caused great bodily injury when she shot at the victim. She contends that the bullet she fired merely grazed the victim and caused an insignificant surface wound. As shown above and as noted by the appellate court, the evidence was inconclusive on this point. Nevertheless, Petitioner argues that the prosecution failed to prove she proximately caused great bodily injury to the victim. The state court found that under California law, where it cannot be determined which defendant fired the harm-inflicting bullet, a

defendant is liable under Cal. Penal Code § 12022.53(d) if her conduct was a substantial factor contributing to the injury. The federal court is bound by the state court's determination of its own law. See <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). The state court concluded that Petitioner's act of pressing a gun to the victim's side and then discharging the weapon at him constituted a substantial factor in causing the injuries sustained by the victim. Petitioner fails to show that no fairminded jurist would agree with the state court's determination. Petitioner fails to demonstrate that the state court rejection of her claim was contrary to, or an unreasonable application of, the <u>Jackson</u> standard, and the claim should be denied.

2. Instructional Error

Petitioner claims the use of pattern instruction CALCRIM No. 3149 failed to fully define proximate cause, and as a result, Petitioner was denied her constitutional rights to a jury trial and due process. She asserts that CALCRIM No. 3149 omitted language found in an earlier standard instruction which mandated a chronological or temporal requirement to causation. Petitioner claims she was prejudiced by the incomplete instruction because the unique facts of her case required the jury to understand the setting-in-motion requirement, and its omission from the instructions was critical to the case.

Petitioner raised this claim on direct appeal. In the last reasoned decision, the Fifth DCA denied the claim as follows:

[] *Background*

Prior to jury deliberations, the court instructed the jury with CALCRIM No. 3149 (Personally Used Firearm: Intentional Discharge Causing Injury or Death) as follows:

"Now, if you find a defendant guilty of the crimes charged in Counts One or Two, you must then decide whether[,] for each of those crimes[,] the People have proved the additional allegation that the defendant personally and intentionally discharged a firearm during that crime causing great bodily injury. You must decide whether the People have proved this allegation for each crime and return a separate finding for each crime.

"To prove this allegation the People must prove beyond a reasonable doubt that[:] one, the defendant personally discharged a firearm during the

10

commission of that crime[;] [t]wo, the defendant intended to discharge the firearm[;] and, three, the defendant's act caused great bodily injury to a person. [¶] ... [¶]

"Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm.

"An act causes great bodily injury if the injury is the direct, natural [,] and probable consequence of the act and the injury would not have happened without the act. [¶] A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable [,] consider all of the circumstances established by the evidence. [Fn.9]

[Fn.9] The Bench Notes to CALCRIM No. 3149 specify: "If causation is at issue, the court has a sua sponte duty to instruct on proximate cause [citation]; give the bracketed paragraph that begins with 'An act causes....' " (Boldface omitted.)

"There may be more than one cause of great bodily injury. An act causes injury only if it is a substantial factor in causing the injury. A substantial factor is more than a trivial or remote factor. However, it does not need to be the only factor that causes injury. [Fn.10]

[Fn.10] The Bench Notes to CALCRIM No. 3149 specify: "If there is evidence of multiple potential causes, the court should also give the bracketed paragraph that begins with 'There may be more than one cause....' [Citation.]"

"The People have the burden of proving each allegation beyond a reasonable doubt. If the People have not met this burden, you must find that this allegation has not been proved."

For the first time on appeal, Franco objects to CALCRIM No. 3149 on the grounds the instruction did not adequately define proximate causation.

[] *Standard of review*

"A claim of instructional error is reviewed de novo." (*People v. Ghebretensae* (2013) 222 Cal.App.4th 741, 759, citing *People v. Guiuan* (1998) 18 Cal.4th 558, 569570.) "'In considering a claim of instructional error [,] we must first ascertain what the relevant law provides, and then determine what meaning the instruction given conveys. The test is whether there is a reasonable likelihood that the jury understood the instruction in a manner that violated the defendant's rights. In making this determination[,] we consider the specific language under challenge and, if necessary, the instructions as a whole. [Citation.]' [Citations.]" (*People v. Lopez* (2011) 199 Cal.App.4th 1297, 1305.)

[] *Analysis*

At the outset, while Franco did not object to CALCRIM No. 3149 below, under section 1259, an appellate court may review "*any instruction given*, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby.'" (Accord, *People v. Brown* (2003) 31 Cal.4th 518, 539, fn. 7, italics added in original; *People v. Lopez,*

*supra*, 199 Cal.App.4th at p. 1305, fn. 35.) "The cases equate 'substantial rights' with reversible error, i.e., did the error result in a miscarriage of justice? [Citations.]" (*People v. Arredondo* (1975) 52 Cal.App.3d 973, 978; see *People v. Watson* (1956) 46 Cal.2d 818, 836 ["[A] 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."].) "'Ascertaining whether claimed instructional error affected the substantial rights of the defendant necessarily requires an examination of the merits of the claim....' [Citation.]" (*People v. Lawrence* (2009) 177 Cal.App.4th 547, 553, fn. 11.) [Fn.11]

> [Fn.11.] In her brief, the Attorney General cites the general rule that "a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language. [Citations.]" (Accord, *People v. Andrews* (1989) 49 Cal.3d 200, 218.) However, in our view, this rule does not apply here because Franco's argument "go[es] beyond a claim CALCRIM No[ ]. [3149] ... w[as] merely incomplete, and instead assert[s] [it] w[as] not 'correct in law.'" (*People v. Lawrence, supra*, 177 Cal.App.4th at p. 554, fn. 11; accord, *People v. Franco* (2009) 180 Cal.App.4th 713, 719.)

Pursuant to subdivision (d) of section 12022.53, "any person who, in the commission of a felony specified in subdivision (a), [Fn.12] ... personally and intentionally discharges a firearm and *proximately causes* great bodily injury ... to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life." (Italics added.)

> [Fn.12] Qualifying felonies include robbery (§ 12022.53, subd. (a)(4)) and attempted murder (*id*., subds. (a)(1), (18)).

"To establish ... causal connection and for criminal liability to attach, the evidence must show that the defendant's conduct was both the actual and the legal, or proximate, cause of the ... injuries" (*People v. Marlin* (2004) 124 Cal.App.4th 559, 569), meaning (1) " 'the defendant's conduct must be the "but-for" cause (sometimes called the "cause in fact") of the forbidden result' " (*ibid*.); and (2) " 'the defendant may fairly be held responsible for the actual result' " (*ibid*.). In other words, "the cause of the harm not only must be direct, but also [must] not [be] so remote as to fail to constitute the natural and probable consequence of the defendant's act." (*People v. Roberts* (1992) 2 Cal.4th 271, 319; see id. at p. 320, fn. 11 ["[T]here is no bright line demarcating a legally sufficient proximate cause from one that is too remote."].) In addition, "there may be multiple proximate causes of [harm], even where there is only one known actual or direct cause...." (*People v. Sanchez* (2001) 26 Cal.4th 834, 846.) "'"When the conduct of two or more persons contributes concurrently as the proximate cause of [harm], the conduct of each is a proximate cause ... if that conduct was also a substantial factor contributing to the result...."' [Citation.]" (*Id*. at p. 847, italics omitted; see *People v. Jennings* (2010) 50 Cal.4th 616, 643 ["'[T]he defendant's act must have been a substantial factor contributing to the result, rather than insignificant or merely theoretical.' [Citation.]"].)

We have examined CALCRIM No. 3149 (see *ante*, at pp. 5–6) and conclude its definition of proximate causation comports with the law. (See *People v. Runnion* (1994) 30 Cal.App.4th 852, 858 ["[T]he trial court's obligation is to state the law correctly."].) Since a jury is "presumed to understand and follow the court's instructions" (*People v. Holt* (1997) 15 Cal.4th 619, 662), we cannot conceive a

reasonable likelihood it applied CALCRIM No. 3149 in an improper manner. Therefore, we find no instructional error.

Franco contends CALCRIM No. 3149's definition of proximate causation is deficient because the verbiage is not identical to that found in CALJIC No. 17.19.5 (Intentional and Personal Discharge of Firearm/Great Bodily Injury), which was found to "correctly define proximate causation." (*People v. Bland* (2002) 28 Cal.4th 313, 336, 338 (*Bland*).) CALJIC No. 17.19.5 defines proximate causation as follows:

> "'A proximate cause of great bodily injury or death is an act or omission that sets in motion a chain of events that produces as a direct, natural and probable consequence of the act or omission the great bodily injury or death and without which the great bodily injury or death would not have occurred.'" (Accord, *Bland, supra*, 28 Cal.4th at p. 335, brackets omitted in original.)

Of paramount concern to Franco is CALCRIM No. 3149's omission of the phrase "'sets in motion a chain of events.'" She maintains this phrase establishes the "chronological or temporal requirement to causation" and its absence "lessen[s], even essentially eliminate[s], the causa[tion] requirement." We disagree as we see nothing in the language of CALCRIM No. 3149 suggesting (1) the jury could attribute great bodily injury to a subsequent act; or (2) proximate causation is not an essential element of the firearm discharge enhancement.

Valdez, 2016 WL 3219141, at *3-5.

### a. Legal Standard and Analysis

Respondent is correct that Petitioner fails to present a federal claim, since Petitioner is challenging the application and interpretation of state law. It is well-settled that federal habeas relief is not available to state prisoners challenging state law. Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1997) ("alleged errors in the application of state law are not cognizable in federal habeas corpus" proceedings). Petitioner challenges the state court's determination that CALCRIM No. 3149 comported with state law. Such challenge does not give rise to a federal question cognizable on federal habeas review. Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). The state court's conclusion that the definition of proximate causation in CALCRIM No. 3149 comports with the law is binding on the federal court. Thus, the claim is not cognizable on federal habeas and should be rejected.

With respect to Petitioner's claim that the instruction violated her due process rights, it is without merit. To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See Estelle, 502 U.S. at 72; Cupp v. Naughten, 414 U.S. 141, 147 (1973); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'"). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. See Estelle, 502 U.S. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)); Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988); see, e.g., Middleton v. McNeil, 541 U.S. 433, 434–35 (2004) (per curiam) (no reasonable likelihood that jury misled by single contrary instruction on imperfect self-defense defining "imminent peril" where three other instructions correctly stated the law).

Moreover, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson, 431 U.S. at 155. Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "'especially heavy burden.'" Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir.1997) (quoting Henderson, 431 U.S. at 155), *cert. denied*, 522 U.S. 1079 (1998). The significance of the omission of such an instruction may be evaluated by comparison with the instructions that were given. Murtishaw v. Woodford, 255 F.3d 926, 971 (9th Cir.2001) (quoting Henderson, 431 U.S. at 156), *cert. denied*, 535 U.S. 935 (2002).

In addition, a habeas petitioner is not entitled to relief unless the instructional error "'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). In other words, state prisoners seeking federal habeas relief may obtain plenary review of constitutional claims of trial error, but are not entitled to habeas relief unless the error resulted in "actual prejudice." Id. (citation omitted); see Calderon v. Coleman, 525 U.S. 141, 146–47

(1998).

Here, the state court determined that there was no reasonable likelihood that the jury could have applied CALCRIM No. 3149 in an improper manner. The state court examined Petitioner's argument that CALCRIM No. 3149 did not contain a temporal requirement, and that the omission of the phrase "sets in motion a chain of events" lessened or eliminated the causation requirement. The court rejected the argument and found "nothing in the language of CALCRIM No. 3149 suggesting: (1) the jury could attribute great bodily injury to a subsequent act; or (2) proximate causation is not an essential element of the firearm discharge enhancement." Valdez, 2016 WL 3219141, at *5. A fairminded jurist could agree with the state court's determination that the instruction did not violate due process and that Petitioner did not suffer any prejudice. Petitioner fails to establish that the state court's determination was contrary to or an unreasonable application of Supreme Court authority. The claim should be denied.

3. Ineffective Assistance of Counsel

In her final claim, Petitioner alleges defense counsel was ineffective in failing to investigate, subpoena, and introduce the actual medical reports proving the shot she fired was a graze wound that did not enter the body but just nicked the skin. This claim was raised in habeas petitions to the state courts. The Fresno County Superior Court issued the last reasoned decision which denied the claim on the merits, as follows:

> In order to demonstrate ineffective assistance of counsel, a Petitioner must first show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. (*Strickland v. Washington* (1984) 466 U.S. 668, 690-92.) In addition to showing that counsel's performance was deficient, a petitioner must also demonstrate prejudice in order to obtain relief. (*Strickland v. Washington, supra*, 466 U.S. 668, 690-92; *People v. Ledesma*, (1987) 43 Cal.3d 171, 217.) To demonstrate prejudice, the petitioner must demonstrate that there is a reasonable probability that but for counsel's failings, the result of the proceeding would have been more favorable to the petitioner. (*In re Alvernaz* (1992) 2 Cal.4th 924, 936-37.)
>
> Here, the Court finds that Petitioner has failed to demonstrate that the result of her criminal proceeding would have been more favorable were it not for her attorney's actions or inactions. Penal Code section 12022.53 subdivision (d) applies when the defendant personally and intentionally discharges a firearm that *proximately causes* great bodily injury in the course of specified felonies. (Pen. Code, § 12022.53, subd. (d).) "Proximately causing and personally inflicting harm are two different things." (*People v. Bland* (2002) 28 Cal.4th 313, 336 [*Bland*].) In fact, "section 12022.53(d) does not require that the defendant fire a bullet that directly inflicts the harm. The

enhancement applies so long as defendant's personal discharge of a firearm was a proximate, i.e., a substantial, factor contributing to the result." (*Id*. at pgs. 337-38.) "*Bland* made clear that section 12022.53, subdivision (d) does *not* require the defendant *personally* inflict the injury. *Bland* teaches that, as long as the injury was proximately caused by the discharge of the firearm, the statute's requirements are met. Put differently, the defendant's discharge of a firearm may be the proximate cause of a victim's injury, even if the defendant's bullet does not hit the victim." (*People v. Palmer* (2005) 133 Cal.App.4th 1141, 1150-1152.)

On appeal from her judgment, the Fifth District Court of Appeal determined that substantial evidence supported the finding that Petitioner has proximately caused the victim's injuries within the meaning of Penal Code section 12022.53 subdivision (d). (*People v. Maria Antonia Franco* (June 2, 2016, F068411) [nonpub. opn.] at p. 13.) In this regard, the appellate court determined that "[t]he record […] establishes that Valdez fired first from a distance of 17 feet, Franco fired second at close range, and Lopez sustained great bodily injury in the form of severe damage to his small intestine and vena cava." (*Id*. at pgs. 11-12.) With respect to the victim's injuries, a surgeon testified at trial that the victim sustained two gunshot wounds "in the right upper abdomen and in the left side, respectively. One was the entrance wound and the other was a graze wound." (*Id*. at p. 12.)

Contrary to Petitioner's assertions, the medical records that Petitioner has provided do not establish that Petitioner's co-defendant fired the shot that resulted in the injuries to Petitioner's abdomen. Moreover, it is undisputed that Petitioner fired a shot at the victim "at close range," and Petitioner has failed to demonstrate that her actions were not a proximate cause of the victim's injuries. As Petitioner has failed to demonstrate that she was prejudiced by her attorney's actions or inactions, the Court finds that she has failed to state a prima facie case for habeas corpus relief with respect to her first contention. (*In re Cox* (2003) 30 Cal.4th 974, 1019-20 [stating that a court may dispose of an ineffective assistance of counsel claim if the petitioner has not demonstrated sufficient prejudice without deciding if counsel's performance was deficient].)

[…]

Third, Petitioner appears to argue that a declaration that she has obtained from a juror who deliberated in her underlying criminal case constitutes new evidence that undermines the validity of her convictions and sentence enhancements.

However, Petitioner has failed to demonstrate any overt act of juror misconduct and the declaration provided only reveals the juror's impressions of the deliberation process and her current perspective on the evidence that was presented at trial. (See *In re Hamilton* (1999) 20 Cal.4th 273, 294.) "Evidence of jurors' internal thought processes is inadmissible to impeach a verdict. […] Only evidence as to objectively ascertainable statements, conduct, conditions, or events is admissible to impeach a verdict. [Citations.] Juror declarations are admissible to the extent that they describe overt acts constituting jury misconduct, but they are inadmissible to the extent that they describe the effect of any event on a juror's subjective reasoning process. [Citation.] Accordingly, juror declarations are inadmissible to the extent that they purport to describe the jurors' understanding of the instructions or how they arrived at their verdict." (*Bell v. Bayerische Motoren Werke Aktiengesellschaft* (2010) 181 Cal.App.4th 1108, 1124-25; see also Evid. Code, § 1150, subd. (a); *People v. Hutchinson* (1969) 71 Cal.2d 342, 349-50; *In re Hamilton* (1999) 20 Cal.4th 273, 294.

> In the present case, the Court finds that the juror declaration Petitioner has provided does not undermine the validity of Petitioner's convictions and/or sentences. Consequently, Petitioner has failed to state a prima facie case for habeas corpus relief with respect to her third contention.

(Doc. 26-39 at 1-5.)

### a. Legal Standard

Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel are reviewed according to Strickland's two-pronged test. Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, she must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 687-88. Second, Petitioner must establish that she suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, she would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance. Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Knowles, 556 U.S. at 123. In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court

determination was erroneous, but also that it was objectively unreasonable. <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003). Moreover, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.")

      b. <u>Analysis</u>

In this case, counsel's defense strategy was one of mistaken identity. Defense counsel elicited testimony from a motel guest, Scott Eamigh, who heard the shot and then saw three people leaving the motel room where the victim was shot. (Doc. 26-14 at 24.) He testified that Petitioner was not one of the three people he saw leaving the room. (Doc. 26-14 at 25.)

Petitioner's mother, Mary Franco, also testified that Petitioner came home on the evening of December 1, at approximately 11:30 p.m. (Doc. 26-14 at 95-98.) Mary Franco recalled Petitioner climbing into bed soon after she arrived home. (Doc. 26-14 at 96.) She also testified that she never heard any of Petitioner's friends refer to her as "Princess." (Doc. 26-14 at 98.) The victim had testified that Princess was one of the individuals who had shot him. In addition, Petitioner's mother testified that whenever her daughter is in a confrontational or violent situation, her reaction is to run. (Doc. 26-14 at 107-08.)

Petitioner testified on her own behalf. (Doc. 26-14 at 112.) She testified that no one calls her "Princess." (Doc. 26-14 at 112.) She testified that on the night of December 1, she came into contact with the victim at a convenience store. (Doc. 26-14 at 114.) He asked Petitioner if she wanted to party and then pulled out some money and methamphetamine. (Doc. 26-14 at 114.) She then got into a car with Petitioner, two females and a male, and they headed to a party. (Doc. 26-14 at 115-16.) Petitioner left the party. (Doc. 26-14 at 121.) She testified she was not present at the time the victim was shot, and she did not shoot the victim. (Doc. 26-14 at 121-22.)

Petitioner's best friend, Maria Quesada, testified on Petitioner's behalf. (Doc. 26-16 at 12-13.) She testified that in the 10 to 11 years she had known her, she had never seen Petitioner act violently or threaten anyone. (Doc. 26-16 at 16-17.) She further testified that in any situation

18

where there might be confrontation or violence, Petitioner's reaction would be to leave. (Doc. 26-16 at 16.) She also testified that Petitioner never went by the nickname "Princess." (Doc. 26-16 at 13-14.)

Defense counsel also called Scott Fraser, a professor of neuropsychology, to impeach the victim's testimony. (Doc. 26-16 at 20.) Dr. Fraser was an expert on neuropsychopharmacology, the study of the effects of drugs and substances on the brain and central nervous system functioning as it relates to eyewitness memory. (Doc. 26-16 at 21-22.) Dr. Fraser testified that methamphetamine causes the part of the brain that stores memories to malfunction. (Doc. 26-16 at 40.) As a result, people who are under the influence of methamphetamine have extraordinarily unreliable memory and recall. (Doc. 26-16 at 40.) He further testified that the longer a person uses methamphetamines, the more suspicious and leery they become and they often develop auditory and visual hallucinations. (Doc. 26-16 at 41.) In addition, a person under the influence of methamphetamines who experiences stress or fear would have very poor memories of the experience. (Doc. 26-16 at 49.)

As previously noted, the relevant inquiry is not what counsel could have done, but whether the choices made by counsel were reasonable. Babbitt, 151 F.3d at 1173. In this case, it cannot be said that counsel's decision to pursue a defense or mistaken identity was unreasonable. Further, the defense theory of inflicting a graze wound rather than great bodily injury would have been at odds with the primary defense of not having shot the victim at all. Counsel's decision not to pursue an alternative defense theory which would have been inconsistent with the primary defense was not unreasonable.

In addition, the state court reasonably determined that Petitioner suffered no prejudice. Even if counsel had subpoenaed, investigated and introduced the medical records, there is no reasonable likelihood that the result would have been different. The medical records were inconclusive as to who fired the shot that resulted in the injuries to the victim's abdomen. Thus, the records would not have shown that Petitioner did not proximately cause great bodily injury.

With respect to the juror's declaration, the state court noted that the declaration only revealed the juror's impressions of the deliberation process and her current perspective on the

evidence that was presented at trial. Under state law, the declaration was inadmissible to impeach a verdict. A federal court is bound by a state court's determination of state law. Bradshaw, 546 U.S. at 76. Under federal law as well, a statement by a juror concerning the juror's mental processes in deliberations is inadmissible. Fed. R. Evid. § 606(b)(1).

For the foregoing reasons, Petitioner fails to demonstrate that the state court rejection of her ineffective assistance of counsel claim was contrary to or an unreasonable application of the Strickland standard. The claim should be rejected.

## IV. RECOMMENDATION

Accordingly, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus be DENIED with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within ten court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **June 5, 2019**          /s/ *Sheila K. Oberto*
                                 UNITED STATES MAGISTRATE JUDGE